# Wayne L. Dutton, Respondent, v City of Olean, Appellant.

Fourth Department, January 13, 1978

**APPEARANCES OF COUNSEL**

*Hodgson, Russ, Andrews, Woods & Goodyear (Jerome D. Schad* of counsel), for appellant.

*Joseph C. Dwyer, P. C.,* for respondent.

**OPINION OF THE COURT**

DENMAN, J.

This case arises out of a tragic incident in the City of Olean on December 30, 1974, in which Anthony Barbaro, an honor student and expert marksman, entered the Olean High School, killed the janitor, mounted to the tower and began shooting at passersby. He killed 2 more people and wounded 11 others. One of the wounded was plaintiff Wayne Dutton. Dutton instituted an action against the City of Olean, charg-

ing that the city negligently responded to the emergency situation and that this negligence was responsible for his injuries. The city moved for summary judgment at Special Term, urging that there are no facts from which it could be inferred that the city had a special duty to plaintiff to protect him from the sniper. Special Term denied the motion and the city appeals.

At 3:05 P.M. on December 30, 1974 the Olean Police Department received a telephone call reporting a fire at the Olean High School. The call was transferred to the fire department and equipment was dispatched to the scene. At 3:07 P.M. the police department received a report of gunfire in the vicinity of the high school. In response to that call four police cars were dispatched and the State Police and the Sheriff's Department were notified. Chief of Police Luty arrived at the scene approximately 15 minutes after the first report of shooting had been received and ordered the area sealed off. Dutton had already been shot.

At approximately 3:05 P.M. Captain Limerick of the fire department received a call of a fire at the high school. He responded with two other men in pumper E-41. As the truck started north on Third Street alongside the high school it was met by gunfire and two of his men were wounded. They stopped and took cover on the far side of the vehicle. The two wounded men were evacuated in a police car. One of the police officers, Officer Tambash, remained with Captain Limerick at the truck. Approximately six minutes after he arrived at the fire truck, he saw the Dutton vehicle going south on Third Street toward the Sullivan Street intersection.

Plaintiff had been driving east on Sullivan Street when an unidentified man directed him to turn north on Fifth Street. The man was not wearing a uniform, was unkown to Dutton and said nothing to him. Dutton drove north on Fifth, turned east on Reed Street and finally turned south on Third Street, back toward Sullivan, along the side of the high school. He drove past pumper E-41 but did not see Officer Tambash or Captain Limerick who were on the far side of the truck. When Dutton stopped at the intersection of Third and Sullivan, a round of fire broke the right window of his vehicle and hit the dashboard. The engine died and the horn started blowing. Dutton got out of the car to see what was wrong and spotted the officers behind the fire truck. He began to walk toward them until he realized that they were shouting a warning to

him. As he turned to run, he was struck by a bullet. A fireman attempted to reach Dutton with medical aid but was wounded by gunfire. The fireman was evacuated and admitted to Olean General Hospital at 3:40 P.M.

Plaintiff charges the city with the breach of two duties: a duty to warn and a duty to cordon off the zone of danger. The general rule in New York is that a municipality has a duty to furnish adequate police and fire protection to the general public but cannot be cast in damages for a failure to furnish adequate protection to a specific individual *(Riss v City of New York,* 22 NY2d 579; *Bass v City of New York,* 38 AD2d 407, affd 32 NY2d 894; *Motyka v City of Amsterdam,* 15 NY2d 134; *Zibbon v Town of Cheektowaga,* 51 AD2d 448, app dsmd 39 NY2d 1056; Police Protection—Governmental Liability, Ann., 46 ALR3d 1084). When, however, a special relationship is established between a municipality and an individual, such relationship gives rise to a special duty, the breach of which results in municipal liability. A special duty is owed to informers *(Schuster v City of New York,* 5 NY2d 75), undercover agents *(Swanner v United States,* 309 F Supp 1183), persons under court orders of protection *(Baker v City of New York,* 25 AD2d 770), and school children for whom the municipality has assumed the responsibility of providing crossing guards *(Florence v Goldberg,* 48 AD2d 917). The mere fact that a person is in danger of becoming the victim of a crime, no matter how real or imminent the danger, does not create a special duty. *(Riss v City of New York, supra; Zibbon v Town of Cheektowaga, supra.)*

Duty to an individual may also be born of a situation wherein the municipality acts affirmatively, thereby inducing reliance on the part of the individual and then ceasing such activity without notice. Once the reliance has been induced, the municipality must carry out its activity in a reasonable manner and failure to do so will result in liability. *(Zibbon v Town of Cheektowaga, supra.)*

It is this type of "reliance duty" on which plaintiff seeks to defeat the city's motion for summary judgment. He contends that once the police took the affirmative step of diverting him from his intended route, they assumed the duty of keeping him out of the zone of danger. In order for this theory to be even arguable, we must assume the basic premise that the person who diverted plaintiff from his intended route was a police officer or other agent of the city. Not only is the record

devoid of any fact from which such conclusion could be inferred, but plaintiff's sworn statements in the record describe the individual who rerouted him as a civilian in plain clothes, the identity of whom he never discovered. There is no basis for imputing this man's acts to the city and plaintiff's theory must thus fail.

■ Apparently in reliance on plaintiff's representations of affirmative police action, Special Term denied the city's motion for summary judgment, stating that a possible finding of fact would be that the police acted affirmatively and led plaintiff into the danger zone and that if it were so found, there could be liability under the *Zibbon* exception to the general rule. In *Zibbon* the majority found that there were triable issues of fact as to whether the police department had acted affirmatively, thus causing the victims to rely on such action and to fail to take independent cautionary measures. If that were found, the withdrawal of police protection without notice would have been a breach of duty resulting in liability. That is a situation discrete from that before us and its rationale should not be extended to encompass cases such as this in which the results, tragic though they may be, cannot and should not require the municipality to be cast in damages. The order at Special Term should therefore be reversed and the City of Olean's motion for summary judgment should be granted.

CARDAMONE, J. P., SIMONS, DILLON and WITMER, JJ., concur.

Order unanimously reversed, without costs, motion granted and complaint dismissed.